### WEIS v. LEVY et al.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

MORTGAGE—ENFORCEMENT—FRAUD.

Where it appears in an action to foreclose a mortgage that, so far as the beneficial owner of the property is concerned, the sole purpose of enforcing the mortgage is to cut off whatever rights were acquired by the vendee in a contract for the sale thereof on breach of the contract by the beneficial owner, which the vendee was seeking to have specifically performed, equity will not lend its aid to enforce the mortgage, and thereby further the scheme to defraud.

Appeal from Special Term, New York County.

Action by Siegfried Weis against Louis Levy and others. From a judgment in favor of plaintiff, defendant Levy appeals. Reversed in part.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Jacob Manheim, for appellant.
Arthur Hurst, for respondent.

HATCH, J. This action was brought to foreclose a second mortgage upon real estate upon which $1,000 was due. The mortgage was given by Anna Bacouby to Moritz Bauer. Bauer assigned the same to Aaron and Elise Schoenfeld on November 3, 1902, and it purported to be an absolute assignment of the entire interest in the mortgage. It was in fact, however, subject to an assignment of a $500 interest in said mortgage made to Elsie Fuchs. The last assignment was made prior to the assignment to Schoenfeld, but was not evidenced in writing until September 9, 1903, when a formal assignment of the same to Fuchs was executed and recorded. Prior to the commencement of this action, Fuchs authorized the plaintiff, in writing, to foreclose such mortgage in her behalf. Under date of October 30, 1903, recorded March 8, 1904, the Schoenfelds assigned the whole of said mortgage to the plaintiff, who brings this action for the foreclosure of the same.

By the terms of the judgment, the amount of $500, with interest, was adjudged to be due and payable to Elsie Fuchs, the same was directed to be paid to her out of the proceeds of sale, and judgment for deficiency was awarded in her favor against the mortgagor, Anna Bacouby. Judgment was also awarded in favor of the plaintiff for the sum of $500, together with interest and some other items. At the time of the assignment of the mortgage from Schoenfeld to the plaintiff, one Sophie Knepper was the owner of the mortgaged premises. Under date of October 30, 1903, Knepper

entered into a contract to sell the property to the defendant Louis Levy. At the time fixed for the transfer of title pursuant to the terms of this contract, Herman Knepper, the husband of Sophie, and who was acting for her, refused to procure the discharge of certain incumbrances upon the property, for which the contract provided. Levy refused to take title unless such incumbrances were removed, whereupon Knepper broke off the negotiations. These negotiations were had on the 23d day of December, 1903. On the next day Sophie Knepper made and executed a deed of said premises to Jennie Reichman, a sister-in-law of Herman Knepper, and also made and executed a mortgage for $2,750 to the plaintiff in this action, which was recorded on December 24, 1903, at 9 o'clock a. m. Levy began an action for the specific performance of his contract against Sophie Knepper, and filed notice of lis pendens therein at 9 o'clock in the morning of December 24, 1903. Thereafter, and about the 1st of April, 1904, the plaintiff commenced this action. Levy appeared and answered therein, and averred, among other things, as a separate defense, that the assignment of the mortgage by the Schoenfelds to the plaintiff was solely for the benefit of Sophie Knepper; that she had paid and discharged said mortgage prior to the commencement of the action, and had procured to be executed by the plaintiff herein a satisfaction of the said mortgage; and that the attempted foreclosure in this action was to cheat and defraud the defendant Louis Levy out of his rights and interest in and to the property which he had secured by virtue of his contract of sale; and he demanded judgment that the complaint in the action be dismissed. Elsie Fuchs was not made a party to the action, and none of the defendants save Louis Levy made any defense thereto.

The case of the plaintiff was almost wholly supported by the testimony of Herman Knepper, who made quite a remarkable witness. The plaintiff did not appear at the trial, either as party or witness, and it was made clearly to appear by the cross-examination of Herman Knepper that his wife, Sophie, who was one of the firm of Knepper & Co., of which Herman was the moving and controlling spirit, had paid for the interest in the mortgage which was assigned to the plaintiff; that he had procured Elsie Fuchs, without her knowledge, to execute the paper authorizing the plaintiff to foreclose the mortgage in her behalf; that the deed to Reichman was without her knowledge or any communications or negotiations held with her upon the subject; that the mortgage of $2,750 to the plaintiff was wholly without consideration; and that the whole scheme was the creation of Knepper for the purpose of cheating and defrauding the defendant Levy out of his rights and interest in the premises secured by the contract. It also appeared that the sum of $400, which the court found was paid by Sophie Knepper on June 2, 1904, was paid to John E. Domschke as interest upon her bond secured by mortgage upon the property for $16,000, and this was evidenced by the written receipt given to her by Domschke under that date. The other items of interest, water rates, and taxes were only shown to exist by the testimony of Herman

Knepper; but he was shown to be utterly unworthy of credit by the testimony which he gave, the explanations which he made, and the documentary evidence with which he was confronted. Therefrom it was made to appear beyond a reasonable doubt that the plaintiff had no interest whatever in the mortgage, and that the purchase price for the assignment from the Schoenfelds was paid by the certified check of Sophie Knepper; and it was extremely doubtful if the plaintiff had any knowledge whatever upon the subject of the assignment to him. He was evidently under the control of Herman Knepper, was a mere dummy, and did as he was directed. So far, therefore, as the court found and credited the payments upon the first mortgage for the purpose of protecting the second mortgage, it was against the weight of evidence.

Under these circumstances, we are called upon to determine whether the plaintiff became entitled to a judgment of foreclosure and sale under the assignment to him. It is claimed that the facts averred by the defendant Levy in his answer and the proof given upon the trial are insufficient in law to defeat the foreclosure of the mortgage. This claim is made to rest upon the fact that the assignment from him to Schoenfeld vested in him the legal title to the mortgage, and that, without regard to the beneficial interest, he was entitled to maintain the action. It is undoubtedly the rule that as between debtor and creditor, mortgagee and mortgagor, or between the holder of the legal title and one who is obligated to pay the debt, it is matter of indifference whether the holder of the legal title had paid value therefor or not. If he hold it, he has the right to enforce it; the debtor may not complain, because he is obligated to pay; and payment to the holder of the legal title discharges the debt. It has therefore been held that it is no concern of the debtor's how the person holding the legal title acquired it, or whether he paid value therefor or not. Such is the doctrine announced in Sheridan v. The Mayor, 68 N. Y. 30; Hays v. Hathorn, 74 N. Y. 486. Mere motive in enforcing the claim, or making the transfer which vests the legal title in the party seeking to enforce the claim, is of no consequence, as it is the obligation of the debtor to pay. Morris v. Tuthill, 72 N. Y. 575. These cases, however, recognize that the rule is different where the rights of creditors intervene, or of persons having legitimate claims against the property, which would be injuriously affected by the enforcement of the mortgage; and especially is this true where the person holding the beneficial interest, and who has been guilty of fraud, would profit by the enforcement of the claim. It is the rule at law that, where the lesser and larger title unite in the same owner, the former is swallowed up in the latter. At law such rule is without exception. In equity, however, the lesser title is not necessarily subject to such rule of merger; and where the intention of the party, however gathered, exists to keep alive the lesser title, it will be deemed not to have been swallowed up in the greater. Smith v. Roberts, 91 N. Y. 470. This doctrine, however, is subject to the qualification that justice will be promoted by the severance and keeping alive of the two titles. It is never permitted where its enforcement

would work a fraud, or where the rights of third parties would be prejudiced. McGiven v. Wheelock, 7 Barb. 22. There must be some interest vested in the beneficial owner of the title, which justice requires should be promoted, or the merger will take place (Lynch v. Pfeiffer, 110 N. Y. 33, 17 N. E. 402); and it is abhorrent to equity to make use of its rules to aid in the perpetration of a fraud.

By the proof in this record, it is shown with a considerable degree of clearness that so far as Sophie Knepper, or Knepper & Co., is concerned, the sole purpose in enforcing this mortgage is to cut off and foreclose whatever rights the defendant Levy may have acquired by virtue of his contract. No other defendant has the slightest interest in the action. The mortgage was a lien upon the property owned by Sophie Knepper. It was the primary fund for the payment of the mortgage. The equity in the premises owned by her was worth more than the amount of the first mortgage lien and the lien of this mortgage. She paid by her certified check one-half of the amount due and payable thereon, and only seeks to keep it alive and enforce it to that extent for the purpose of defeating whatever rights the defendant Levy may have secured. It follows, therefore, that, as between the plaintiff and Levy, the former acquired no right as against Levy, to enforce this mortgage to the extent of the interest paid by Sophie Knepper. Levy was not obligated to pay the mortgage. He did not, therefore, stand as a debtor in that instrument. His attitude is that of a creditor having a claim against Sophie Knepper, the owner of the property, which he is seeking to enforce. Under these circumstances, equity will not lend its aid to enforce this mortgage, and thereby further the fraudulent scheme conceived by Herman Knepper for the benefit of his wife, and to defraud creditors.

It follows that the judgment of foreclosure in favor of this interest represented by the plaintiff should be reversed, and a new trial granted, with costs to the appellant, Levy, to abide the event. As to that part of the judgment which awards a foreclosure of the mortgage in favor of the plaintiff for the benefit of Elsie Fuchs, it should be enforced as granted to the extent of her claim; but it should be modified by requiring that such interest, when collected, shall be paid over directly to her, or to her authorized attorney, as it seems unsafe to leave it in any respect subject to the control of the plaintiff or Herman Knepper.

As so modified, the judgment in this respect should be affirmed, without costs of this appeal to either party. All concur.